IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DIVONTE CALHOUN,** **#M28853,** | |
| Plaintiff, | Case No. 21-cv-01495-SPM |
| v. | |
| **DAVID MITCHELL,** **LU WALKER,** **DEVAN FISCHER,** **BRIAN BANKS,** **AUSTIN LASTER,** **Z MOORE,** **CALVIN PIND,** **JACOB HORN,** **KIM JOHNSON,** **CURTIS L MOORE,** **MR. FLORITINI,** **R HUGHES,** **D. WILLIFORD, and** **JONATHAN WINTERS,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff DiVonte Calhoun, an inmate of the Illinois Department of Corrections who is currently incarcerated at Stateville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Shawnee Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally

construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges the following: On December 17, 2020, Lieutenant Brian Banks placed Plaintiff in segregation under investigation status. That same day, his cell was searched by Officers Calvin Pind, Horn, and Williford. (*Id.* at p. 32, 45). Plaintiff was interviewed on January 7, 2021. (Doc. 1, p. 25). On January 12, 2021, Plaintiff received an unsupported disciplinary report written by Z. Moore for drugs and drug paraphernalia, gambling, giving false information to an employee, and possession of contraband. (Doc. 1 p. 25; Doc. 1-1, p. 4). The following day, on January 13, Plaintiff received a false disciplinary report written by Pind for possession of contraband. (Doc. 1, p. 32; Doc. 1-1, p. 1). Plaintiff filed two grievances about the disciplinary tickets, grievances #2021-1-58 and #2021-1-59. (Doc. 1, p. 32-33).

At the disciplinary hearing for the disciplinary report issued by Z. Moore, Austin Laster, the Adjustment Committee Chairperson, did not follow proper procedures during and following the hearing. Laster did not read Plaintiff the charges against him and gave only one rational in support of the finding of guilt. (*Id.* at p. 28). Additionally, IDOC policy requires that the final summary report be signed by all members of the committee, and only Laster signed the final summary report. (*Id.* at p. 27, 47). At no time was Plaintiff tested for any drugs and drugs were not found in his possession. Plaintiff was found guilty of all the charges and punished with six months in segregation, a disciplinary transfer, and six months contact visit restrictions. (*Id.* at p. 31).

On September 13, 2021, Pind met with Plaintiff in a private room and asked Plaintiff to cancel grievances #2021-1-58 and #2021-1-59. (Doc. 1, p. 19-20). Pind told Plaintiff that if Plaintiff canceled the grievances, then he could provide Plaintiff a grade restoration. When Plaintiff refused, Pind told Plaintiff, "We will find a reason to write you…another ticket within the next week and trust me...it's going to get worse for you….So you…better cancel at least one

of the these grievances." (*Id.* at p. 21). Plaintiff then canceled grievance #2021-1-58, which was written against Pind and wrote a subsequent grievance about the threats made by Pind. (*Id.* at p. 22).

On January 13, 2022, Plaintiff send a request to the record's office asking for a copy of grievance #2021-1-58 and the cancelation form he had submitted. (Doc. 1, p. 22). His request was ultimately denied by Kim Johnson.

### PRELIMINARY DISMISSAL

Plaintiff claims that Warden David Mitchell and Warden Lu Walker had the powers to correct the violations that occurred and the duty to act but instead "not only did they fail to correct the violations they acted in concert with the other defendants accusing mental suffering to the Plaintiff by negligence[sic] to rectify the issues stated here in which they had full-knowledge..." (Doc. 1, p. 39). These allegations are not enough to state a claim against either Mitchell or Walker. These defendants cannot be held liable solely based on their roles as supervisors, as there is no *respondeat superior* liability under Section 1983. Furthermore, they cannot be held liable because they reviewed grievances. There must be "some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Arenett v. Webster,* 658 F. 3d 742, 757 (7th Cir. 2011). Plaintiff does not include any factual allegations suggesting that Mitchell and Walker were personally involved in the constitutional violations, and the Court does not accept "as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross,* 578 F. 3d 574, 581 (7th Cir. 2009). For these reasons, the claims against Mitchell and Walker are dismissed without prejudice.

The Court also dismisses any claims against Curtis L. Moore. Plaintiff states that the final summary of the Adjustment Committee wrongly recorded that Curtis Moore wrote the disciplinary ticket, but he has not described any conduct on the part of Curtis Moore or Moore's involvement

in any constitutional violations. (Doc. 1, p. 30-31). Accordingly, Plaintiff has not stated a plausible claim against Curtis Moore.

Finally, Plaintiff claims that when he was released from segregation, he was forced to live in the restrictive housing unit where he had to share two phones with seventeen other inmates, there was no cable, and he could not have a job, attend school, or earn good time credits. He claims that restrictive housing is not supposed to house inmates who have finished serving time in segregation. (Doc. 1, p. 41-42). Plaintiff does not describe how wrongful placement in restrictive housing or the conditions he experienced involved any of the named Defendants. Thus, any claims he is attempting to bring relating to his time in restrictive housing are dismissed.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Fourteenth Amendment claim against Banks, Z. Moore, and Laster for denying Plaintiff due process in connection with placement of Plaintiff in segregation beginning on December 17, 2020, the issuance of a false disciplinary ticket, and the subsequent disciplinary hearing.

**Count 2:** Eighth Amendment claim for cruel and unusual punishment against Banks, Z. Moore, and Laster in connection with placement of Plaintiff in segregation beginning on December 17, 2020, the issuance of a false disciplinary ticket, and the subsequent disciplinary hearing

**Count 3:** Fourteenth Amendment due process claim against Pind, Horn, and Williford for fabricating a search record and confiscated contraband form.

**Count 4:** Fourteenth Amendment due process claim against Hughes, Johnson, Winters, and Floritini for the mishandling of his grievance.

**Count 5:** First Amendment claim against Fischer, Horn, Z. Moore, Johnson, and Pind for interfering with Plaintiff's right to access the courts.

**Count 6:** First Amendment claim against Johnson for violating Plaintiff's

|  |  |
|---|---|
|  | freedom of speech by not giving him a copy of his grievance cancelation request. |
| **Count 7:** | First Amendment claim against Pind for threatening Plaintiff in retaliation for writing grievances. |
| **Count 8:** | Civil conspiracy claim against Defendants. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly*[1] **pleading standard.**

### Count 1

When a plaintiff brings an action under Section 1983 for procedural due process violations, he must plead that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court reviewing a due process claim must, therefore, engage in a two-part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

"Prisoners do not have a constitutional right to remain in the general population." *Isby v. Brown,* 856 F. 3d 508, 524 (7th Cir. 2017). *See also Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest "is triggered only when the confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn,* 933 F.3d 705, 721

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

(7th Cir. 2019) (internal quotations and citations omitted). In assessing whether placement in segregation imposes atypical and significant hardship, the Court looks to the length of a prisoner's confinement in segregation in combination with the conditions he endured there. *See Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015).

Plaintiff alleges that he was placed in segregation by Banks without being told the reason for his placement, and then, because of the unsubstantiated disciplinary ticket written by Z. Moore and the finding of guilty by Laster following improper disciplinary proceedings, he was sentenced to six months in segregation and his contact visits were restricted for six months. He also received a disciplinary transfer. (Doc. 1, p. 31). During his time in segregation, Plaintiff asserts he remained in his cell except for three showers per week and three times per week when he attended yard. (Doc. 1, p. 40). He was unable to receive visits from his family and was isolated from general population. Plaintiff also was unable to have a job, attend school, and earn good time credits. (*Id.*).

Here, Plaintiff has not sufficiently pled that he was deprived of a protected liberty interest and so no due process was required prior to placing him in segregation and transferring him to another facility. Plaintiff has no liberty interest in participating in educational activities or employment programs, and there is no constitutional right to earn good time credits. *See Zimmerman v. Tribble,* 226 F. 3d 568 (7th Cir. 2000); *Soule v. Potts*, 676 F. App'x 585, 586 (7th Cir. 2017) (no liberty or property interest in a prison job); *DeWalt v. Carter*, 224 F. 3d 607 (7th Cir. 2000) (no procedural due process claim for the loss of a prison job). He also does not have a due process right to be housed in any particular facility. *See Zimmerman v. Tribble,* 226 F. 3d 568, 572 (7th Cir. 2000). Furthermore, the Seventh Circuit has held that a "loss of visitation privileges – including contact visits – is not an atypical and significand hardship." *Woody v. Zatecky,* 594 F. App'x 311, 312 (7th Cir. 2015) (citations omitted). And finally, while Plaintiff describes his conditions in segregation as more severe than those experienced by inmates in general population,

they do not demonstrate a "deprivation of rights that could be considered 'atypical and significant hardship.'" *Hardaway v. Meyerhoff,* 734 F. 3d 740, 744 (7th Cir. 2013) (no liberty interest implicated where inmate spent six months in segregation with a violent cellmate and "was permitted to use the shower and prison yard once every week").

Additionally, Plaintiff's assertion that his due process rights were violated because Banks, Z. Moss, and Laster did not follow IDOC procedure or administrative regulations also fails, as a "violation of prison rules does not, without more, offend the Constitution." *Owens v. Funk,* 760 F. App'x 439, 443 (7th Cir. 2019) (citing *Fuller v. Dillon,* 236 F. 3d 876, 880 (7th Cir. 2001)). Because Plaintiff has failed to allege that he suffered the loss of a liberty interest which would trigger due process protections, Count 1 is dismissed without prejudice.

**Count 2**

Plaintiff alleges that it was cruel and unusual punishment for Banks to place him in segregation under investigative status without giving any reason or nature of the investigation, for Z. Moore to write the disciplinary report solely from hearsay without substantiating the statements made by confidential informants, and for Laster to find him guilty without any evidence other than the disciplinary report. (Doc. 1, p. 38-39).

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981)(citing *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *See Rhodes*, 452 U.S. at 346; *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

The conduct alleged by Defendants Banks, Moore, and Laster does not amount to cruel and unusual punishment prohibited by the Eighth Amendment. As mentioned, while their actions

may have violated prison administrative rules, they do not amount to a constitutional violation. Nor was Plaintiff denied the "minimal civilized measure of life's necessities" while in segregation, because of their conduct. *Giles v. Godinez,* 914 F. 3d 1040, 1051 (7th Cir. 2019). *See also Dobbey v. Ill. Dep't of Corr.,* 574 F. 3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one think of cruel and unusual punishment" under the Eighth Amendment). Accordingly, Count 2 is dismissed.

### Count 3

Plaintiff alleges that Pind, Horn, and Williford violated his Fourteenth Amendment due process rights by fabricating information on the search record and confiscated contraband form. (Doc. 1, p. 31-32). He states that they falsely recorded that an incident report or a disciplinary report was not written, only minor contraband was found, and he did not have a cellmate at the time of the search.

As previously discussed in Count 1, a procedural due process violation occurs under the Fourteenth Amendment when a state actor deprives an individual of a constitutionally protected interest in "life, liberty, or property" without providing adequate process. Plaintiff has not identified a liberty or property interest that he was deprived of in relation to the fabricated search record and confiscated contraband form. To the extent some of his property was not returned to him following the search of his cell, Illinois provides an adequate post-deprivation remedy, an action for damages in the Illinois Court of Claims. Thus, he must pursue any claims for the loss of his property in the Illinois Court of Claims. Count 3 is dismissed.

### Count 4

Plaintiff asserts that Hughes violated his Fourteenth Amendment due process rights by waiting eight months to review his grievance. (Doc. 1, p. 32). Likewise, Johnson, Winters, and Floritini gave "deceiving" information in responding to his grievances. (*Id.* at p. 33-34). He asserts

that Defendants worked together to interfere with his Fourteenth Amendment rights. (*Id.* at p. 33).

Count 4 does also not survive screening. Standing alone, the mishandling of inmate complaints by grievance officials does not state a constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Therefore, Count 4 is dismissed.

**Count 5**

Plaintiff asserts that Fischer, Horn, and Z. Moore violated his right to access the courts by withholding the search record and confiscated contraband form from him. (Doc. 1, p. 34). He claims Johnson interfered with his right to access the courts by not giving him a copy of grievance #2021-1-58 and the cancelation form. (*Id.* at p. 36). Finally, he asserts that Pind interfered with his right to access the courts by trying to bribe him to cancel grievances and by threatening him when he refused to cancel the grievance. (*Id.* at p. 37).

In the Section 1983 context, a plaintiff who pursues a claim for denial of access to the courts "must identify an underlying nonfrivolous claim that the prison officials' actions impeded." *Delgado v. Godinez*, 683 F. App'x 528, 529 (7th Cir. 2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996)). Here, Plaintiff has failed to plausibly allege that he lost a valid legal claim or defense because he was not provided copies of certain forms or because Pind attempted to bribe and then threatened him. Thus, Count 5 is dismissed.

**Count 6**

Plaintiff also asserts that by not providing him a copy of grievance #2021-1-58 and the

cancellation form, Johnson violated his right to free speech. (Doc. 1, p. 22).

As stated previously, the Constitution does not mandate grievance procedures. *See Owens v. Hinsley,* 635 F. 3d 950, 953 (7th Cir. 2011). Thus, Plaintiff has not stated a claim to the extent he asserts Johnson somehow did not follow grievance procedures by refusing to give him a copy of his grievance and cancelation form. Furthermore, Plaintiff has not pled how refusing to provide him copies of these documents restrained his ability to engage in protected speech. Count 6 is dismissed.

**Count 7**

Plaintiff claims that because he wrote grievances, Pind retaliated against him by threatening to write a disciplinary ticket against him and to make things worse for him unless he canceled one of his grievances. (Doc. 1, p. 20-21). He states that out of fear and intimidation, he canceled grievance #2021-01-58 concerning the disciplinary report written by Pind for possession of contraband. Plaintiff, however, also states that once he returned to his cell, he "immediately wrote a grievance (#2021-09-230) to report this incident."

To state a First Amendment retaliation claim, a plaintiff must allege three elements: (1) speech protected by the First Amendment; (2) a deprivation that would likely deter similar activity in the future; and (3) that the activity was "at least a motivating factor" in the defendant's decision to take retaliatory action. *Bridges v. Gilbert,* 557 F.3d 541, 546.

As pled, Plaintiff has not stated a plausible claim for a First Amendment violation, as he has failed to plead that he suffered a deprivation severe enough to deter future protected speech. "The Seventh Circuit has held that threats by prison guards do not amount to retaliation since they would not (and here, did not) deter future grievances from a prisoner." *Mack v. Chandler,* No. 16 CV 50036, 2018 WL 741466, at *2 n. 1 (N.D. Ill. Feb. 7, 2018) (citing *Antoine v. Uchtman*, 275 F. App'x. 539, 541 (7th Cir. 2008)). *See also Davenport v. Szczepanski,* 704 F. App'x 602, 603

(7th Cir. 2017) (denial of request for new shoes would not likely deter future grievances, and to the contrary, the plaintiff responded to the denial "by filing *more* grievances" against the defendant). Accordingly, Count 7 is dismissed.

### Count 8

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015).

Plaintiff asserts that all Defendants acted as part of a conspiratorially planned disciplinary action to intentionally inflict emotional distress and to cause pain and suffering in violation of the Eighth Amendment. (Doc. 1, p. 24, 25, 27, 37, 38, 42). These general assertions do not sufficiently allege that any of the Defendants agreed to a scheme to deprive him of his rights, and allegations of parallel conduct will not suffice. *See Twombly,* 550 U.S. at 556-557 (2007). Furthermore, Plaintiff has not stated a plausible claim that his constitutional rights were violated by any Defendants and without an underlying constitutional claim, there is likewise no viable civil rights claim for a conspiracy. *See Smith v. Gomez* 550 F.3d 613, 617 (7th Cir. 2008) ("conspiracy is not an independent basis of liability in § 1983 actions"). Count 8 is dismissed.

### LEAVE TO AMEND

Because all claims for relief against any of the named Defendants have been dismissed, the Complaint does not survive preliminary review and shall be dismissed without prejudice. Plaintiff will be given an opportunity to replead his claims in an amended complaint.

**MOTIONS FOR RECRUITMENT OF COUNSEL**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 2). As a litigant in a civil case, he has no right to counsel. *Pruitt v. Mote,* 503 F.3d 647, 649 (7th Cir. 2007). However, a District Court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915 (e)(1) (emphasis added). Plaintiff has not submitted any documentation to demonstrate to the Court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the Court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Thus, motion his denied without prejudice.

Plaintiff may refile his motion, but he should provide the Court an affidavit of financial status and supporting documentation such as a copy of his prisoner trust fund account. *See* Amendments to the Local Rules 83.9(a).

**DISPOSITION**

For the reasons stated above, the Complaint is **DISMISSED** without prejudice for failure to state claim for relief pursuant to Section 1915A.

The Motion to Appoint Counsel is **DENIED.** (Doc. 2). The Motion for Status is **DENIED as moot** in light of this Order. (Doc. 24).

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **April 24, 2023**. Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to state claim, failure to comply with a court order, and/or for failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that Plaintiff use the civil rights complaint form designed for use in this District. He should label the form, "First Amended Complaint," and he should use the

case number for this action (No. 22-cv-00509-SPM). To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail him a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The First Amended Complaint must stand on its own without reference to any previous pleading. The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   March 27, 2023**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**